# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ANNA BELLE NEWMAN, as Personal Representative of the Estate of DeWillis Young,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No.:  **2:05-CV-2507-RDP** |
| **ALLSTATE INSURANCE COMPANY, et al.,** ) ) ) | |
| **Defendants.** ) | |

## **MEMORANDUM OPINION**

**I.   Introduction**

Pending before the court is Plaintiff's Motion for Summary Judgment (Doc. #23). This motion follows a joint status conference held at the direction of the court on February 16, 2006 at 2:30 p.m. in chambers of the undersigned. (Doc. #20). At that conference, the parties agreed to have the court address two preliminary legal issues that will affect the direction of the case and the amount of discovery necessary to move the litigation forward. (Doc. #21). The first of the two pending preliminary issues to be decided by the court is whether Plaintiff's settlement for less than the policy limits of all the tortfeasors involved in the accident bars Plaintiff from recovering uninsured or underinsured motorist benefits ("UIM benefits") from Defendants under Alabama law. The second issue is whether Plaintiff's pre-action *pro tanto* settlement for policy limits with the underinsured motorist's insurance carrier fulfills the requirements of Alabama Code § 32–7–23(b)(4) such that Plaintiff's settlement with the other tortfeasors for less than policy limits has no bearing on this case. These issues were under submission on May 5, 2006 and have now been fully briefed by the parties.

As explained in detail below, because the court finds Plaintiff's settlement for less than the policy limits of all the tortfeasors involved in the accident does not bar Plaintiff from recovering UIM benefits from Defendants under Alabama law, and since Plaintiff's recovery from the underinsured motorist's insurance carrier up to policy limits satisfactorily fulfills the prerequisites to UIM recovery under Alabama Code § 32–7–23(b)(4), Plaintiff's Motion for Summary Judgment is due to be granted.

## II.     Statement of Facts

This action arises out of an automobile accident that occurred on November 16, 1999, in Mobile County, Alabama.[1]  Plaintiff Anna Belle Newman's ("Plaintiff") decedent, DeWillis Young ("Young"), was a passenger in a 1989 Chevrolet C-10 pickup driven by Paul E. Goode, Jr ("Goode"). Also passengers in Goode's vehicle were Tanja Edwards ("Edwards") and Landi Thomas ("Thomas").  Claims were made against Goode, as well as McClendon Trucking Company ("McClendon") and Jeffery Henderson ("Henderson") for the death of Young.  Defendant Allstate Indemnity Company[2] ("Allstate Indemnity") was the UIM carrier providing coverage to Young.

The accident occurred on U.S. Highway 98 in Mobile County on a section of that highway with a posted speed limit of 40 miles per hour.  State Trooper Sergeant R. T. Fulmer ("Fulmer")

---

[1]All facts are taken from the parties' Joint Stipulated Facts (Doc. #22), unless otherwise noted.

[2]The court is aware that three defendants—Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Company—remain involved in the present action. Further, the court is also aware that Defendants contend that only Allstate Indemnity Company is a proper party to the action, since it actually issued the insurance policy in question.  However, since Defendants merely referred to this point in their Opposition to Plaintiff's Motion for Summary Judgment (Doc. #25 at 2), as opposed to making a separate motion to the court to dismiss any improper defendants, the court finds it inappropriate to rule on this issue and will take it under consideration after an acceptable motion has been made.

prepared the Alabama Department of Public Safety Traffic Homicide Investigation Report and calculated that Goode's pickup truck was traveling at least 64 mph at the time his vehicle left the roadway. Henderson stated that Goode was traveling 80–90 mph when Goode passed him in the right-hand, non-passing lane. Fulmer determined that Goode's blood alcohol content was .19 per cent—well above the legal limit—at the time of the accident. The McClendon 18-wheeler truck and the Goode pickup truck never came into contact. After passing the McClendon truck, the Goode pickup truck left the roadway and flipped multiple times. Young, Edwards, and Thomas, were ejected from the pickup truck. Young received multiple serious injuries. Goode was trapped inside the truck and died from his accident-related injuries approximately one month later.

Plaintiff settled her claims against Goode in a pre-action, *pro tanto* settlement for the policy limits ($100,000.00) of his liability policy with Omni Insurance Group. Defendant Allstate Indemnity gave its permission for this settlement prior to its consummation. Plaintiff's claims against Henderson and McClendon were for negligence, wantonness, willfulness, and negligent entrustment. Plaintiff also included claims that Henderson failed to reasonably and accurately notify the authorities of the accident so that Plaintiff's decedent could have received critical care that may have saved his life. The accident occurred at approximately 9:30 p.m. on November 16, 1999; however, Henderson waited until 10:24 p.m. to call for emergency assistance and then misinformed the authorities of the accident location, so that they initiated their search in Baldwin County instead of Mobile County. The victims were not found until the following morning, and Young had died sometime during the night.

After considerable litigation and two mediations, Plaintiff settled her claims against Henderson and McClendon. At the first mediation, Plaintiff was informed that Henderson and

McClendon were covered by two insurance policies. The first policy—the primary policy—afforded coverage in the amount of one million dollars ($1,000,000.00). This amount was tendered to Edwards and Thomas. At that same mediation, Plaintiff was informed that a "coverage issue" existed with regard to the second policy provided by the excess carrier, which was a policy with limits of four million dollars ($4,000,000.00). At the second mediation, Plaintiff agreed to a settlement for the claims asserted in the amount of one million three hundred fifty thousand dollars ($1,350,000.00). The settlement funds were paid by the excess carrier. To Plaintiff's knowledge, the coverage issue was not resolved prior to Plaintiff entering into this compromise settlement in resolution of the claims against Henderson and McClendon. In this action, Plaintiff seeks, *inter alia*, UIM benefits under the Allstate policy covering Plaintiff's decedent in the amount of two hundred thousand dollars ($200,000.00).

**III.    Standard of Review**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R .CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The method used by the party moving for summary judgment to discharge its initial burden on the motion depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115–17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove her case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method

5

requires more than a simple statement that the non-moving party cannot meet its burden at trial. But it does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115–16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In this case, there is no genuine issue of material fact as to the two questions of law posed above. Moreover, after reviewing all of the pleadings and evidence submitted by the parties, the court determines that Plaintiff is entitled to judgment as a matter of law on the following two issues: (1) whether Plaintiff's settlement for less than the policy limits of all the tortfeasors in this accident bars her from recovering UIM benefits from Allstate under Alabama law; and (2) whether Plaintiff's pre-action *pro tanto* settlement for the policy limits of the underinsured motorist's insurance carrier fulfills Alabama Code § 32–7–23(b)(4).

## IV.     Analysis

The parties have limited their summary judgment arguments to two issues they wish the court to decide at this time so that this case may move forward: (1) whether Plaintiff's settlement for less than the policy limits of all the tortfeasors involved in the accident bars Plaintiff from recovering UIM benefits from Defendants under Alabama law; and (2) whether Plaintiff's pre-action *pro tanto*

settlement for the policy limits of the underinsured motorist's insurance carrier fulfills the requirements of Alabama Code § 32–7–23(b)(4), such that Plaintiff's settlement with the other tortfeasors for less than policy limits has no bearing on this case. As the answers to these questions are inextricably intertwined, the court will not separate its discussion of the issues.

Although the parties do not dispute any facts in this case, they do not agree about the meaning of Alabama Code § 32–7–23(b)(4) and how it relates to the entire UIM statute. The legal duties of an insurer providing UIM benefits in Alabama are laid out in the code section cited above. This statute also defines "underinsured motor vehicle" as a part of the term "uninsured motor vehicle":

> (b) The term "uninsured motor vehicle" shall include, but is not limited to, motor vehicles with respect to which:
>
> > (1) Neither the owner nor the operator carries bodily injury liability insurance;
> >
> > (2) Any applicable policy liability limits for bodily injury are below the minimum required under Section 32-7-6;
> >
> > (3) The insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of, the accident; and
> >
> > **(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.**

ALA. CODE § 32–7–23(b) (1975) (emphasis added). *See also Lowe v. Nationwide Ins. Co.*, 521

So.2d 1309, 1309 n. 1 (Ala. 1988). Similarly, the parties agree that AllState's uninsured motorist coverage states:

> A. Coverage
>
> > 1. "We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."
>
> . . . .
> F. Additional Definitions
> . . . .
> > 3. "Uninsured motor vehicle" means a land motor vehicle or trailer:
> . . . .
> > > b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "accident" provides a limit that is less than the amount an "insured" is legally entitled to recover as damages caused by the "accident."

(Doc. # 32 Ex. A at 22, 24–25). Even if Allstate's language and the statutory definition were not similar, it has long been recognized by Alabama courts that the statute must be read into every motor-vehicle policy as fully as if stated in the policy itself. *Omni Ins. Co. v. Foreman*, 802 So.2d 195, 198 (Ala. 2001); *Higgins v. Nationwide Mut. Ins. Co.*, 282 So.2d 301, 303 (1973); *State Farm Mut. Ins. Co. v. Scott*, 707 So.2d 238, 241 (Ala. App. 1997).

Plaintiff interprets the phrase "[t]he sum of the limits of liability under all bodily injury liability . . . insurance policies available to an injured person after an accident" as referring only to those policies applicable to Goode's— the underinsured motorist's— vehicle. Defendants assert that they should not be liable to Plaintiff for UIM benefits under her policy because this statutory

language refers to all liability policies available to Plaintiff from *any* tortfeasor involved in the accident.  Thus, they argue that since Plaintiff accepted a settlement for less than the policy limits from one tortfeasor (McClendon) involved in this multiple tortfeasor accident, she has not exhausted the "sum of the limits of liability under all bodily injury liability bonds and insurance policies available" to her, as required by both her UIM policy with Defendants and Alabama Code § 32–7–23(b)(4).  Unfortunately for Defendants, this same argument has already been rejected by the Alabama Supreme Court.  Indeed, as Justice See noted in his concurrence in *Motley*:

> It is possible to interpret § 32-7-23(b)(4) . . . to mean that before the injured party can collect under his underinsured-motorist coverage the damages the injured party seeks must exceed the combined insurance limits of the insurance policies of all the joint tortfeasors.  However, such a result would impair the injured party's effort to achieve a full recovery.  For example, under the interpretation of § 32-7-23(b)(4) urged by State Farm it is possible that the owner and operator of the vehicle at fault may be underinsured and other recoveries insufficient to fully cover the "damages which the injured person is legally entitled to recover;" nonetheless, the insured purchasing underinsured-motorist coverage may not be entitled to recover under the policy.  Consider the case in which the insured suffers a substantial injury.  The owner and operator of the motor vehicle principally responsible for the injury is minimally insured but clearly liable; however, there is also an alleged third-party tortfeasor against whom there is a colorable claim but who, as a practical matter, has a very limited liability exposure.  If this third-party tortfeasor has very substantial insurance coverage, then the underinsured-motorist insurer might pay nothing under the underinsured-motorist terms of the policy, but the injured party would be far from compensated for the damages he or she is legally entitled to recover from "all bodily injury liability bonds and insurance policies available . . . ."  We should not interpret § 32-7-23(b)(4) to produce such a result without much clearer statutory language indicating the Legislature intended such an outcome than we have here.

*State Farm Mut. Auto. Ins. Co. v. Motley*, 909 So.2d 806, 824 (Ala. 2005) (See, J. concurring specially).

Additionally, Defendants argue that allowing Plaintiff to recover UIM benefits would subvert the judge-made policy in Alabama of disallowing double recovery for a single incident, as well as

undermine the policy of imposing joint and several liability on multiple tortfeasors. (Doc. # 25 at 5). *See also United Servs. Auto. Association*, 329 So.2d 562, 564 (Ala. App. 1976) ("The appellate courts of this state and a majority of the other states which have similar statutes, have construed the legislative purpose of the statute to be that an insured, under every such required coverage for which a premium has been paid, is entitled to collect within the limits of the policy, all damages which he is 'legally entitled to recover.'"); *Safeco Ins. Co. v. Jones*, 243 So.2d 736, 742 (1970) (stating that the underinsured-motorist statute limits recovery of damages to the amount the injured party is legally entitled to recover). *Cf. Tatum v. Schering Corp.*, 523 So.2d 1042, 1048 (Houston, J., dissenting as to the apportionment of punitive damages and citing *Layman v. Hendrix*, 1 Ala. 212, 214 (1840), for the proposition that "the injured party may proceed against the trespassers jointly or severally"). However, the *Motley* court addressed these issues as well, concluding: "'[Underinsured motorist] coverage, by definition, does not duplicate liability coverage but is coverage in excess of liability coverage, and is available to a claimant only after the claimant has exhausted available liability coverages.'" *Motley*, 909 So.2d at 812 (quoting *Dillard v. Alabama Ins. Guar. Association*, 601 So.2d 894, 896 (Ala.1992) (citations omitted)). Turning to the argument that such a result would undermine the policies underlying joint and several liability in Alabama, the court answered that the purpose of the UIM Act, in conjunction with the principles of statutory construction, must take precedent in such a situation:

> Mindful that the purpose of the Act is to provide protection for persons "legally entitled to recover damages from owners or operators of uninsured motor vehicles," and given that the phrase constituting subsubparagraph (4) "relates back" to subparagraph (b), so as to define an "uninsured motor vehicle," we conclude that the descriptive language "all bodily injury liability bonds and insurance policies available to an injured person" refers only to such bonds and insurance policies as pertain to the uninsured/underinsured motor vehicle or vehicles. . . . This construction is

faithful to the animating purpose of the Act and to the syntactical function of a prepositional phrase.

*Id.* at 820–21.

This court finds no reason–related to policy, statutory construction, or otherwise–to contradict the opinion of the State of Alabama's highest court regarding one of its own statutes, and, in fact, finds that anything less than deference would be inappropriate in our federalist system of government. *See e.g. Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Thus, under Alabama law the Plaintiff need only exhaust the "sum of the limits of liability under all bodily injury liability bonds and insurance policies" pertaining to the uninsured/underinsured vehicle itself in order to be eligible to collect UIM benefits from her insurer. *Motley*, 909 So.2d at 820–21. This conclusion simultaneously answers both issues initially presented here. That is, the court concludes that because the court finds Plaintiff's settlement for less than the policy limits of all the tortfeasors involved in the accident does not bar Plaintiff from recovering UIM benefits from Defendants under Alabama law (since she need only recover the limits of any liability policies carried by the underinsured motorist), it follows that Plaintiff's recovery from the underinsured motorist's insurance carrier up to his policy's limits satisfactorily fulfills the prerequisites to UIM recovery under Alabama Code § 32–7–23(b)(4). Plaintiff's ultimate recovery, of course, requires that her damages exceed the policy limits of the liability insurance carried by the underinsured motorist, Goode. *Motley*, 909 So.2d at 821; *see also Morales v. Barnett*, 2006 WL 2925318, at * 2 (Ala. App. Oct. 13, 2006) (quoting *Safeco Ins. Co. v. Jones*, 243 So.2d 736, 742 (Ala. 1970). But that is an issue to be addressed another day.

**V.     Conclusion**

Plaintiff has met her burden of demonstrating that there is no genuine issue of material fact as to the following two issues in this case: (1) Plaintiff's settlement for less than the policy limits of all the tortfeasors involved in the accident does not bar Plaintiff from recovering UIM benefits from Defendants under Alabama law, and (2) Plaintiff's recovery from the uninsured motorist's insurance carrier up to the policy limits satisfactorily fulfills the prerequisites to UIM recovery under Alabama Code § 32–7–23(b)(4). Accordingly, the court will enter an order consistent with this Memorandum Opinion granting summary judgment for Plaintiff on these two issues.

**DONE** and **ORDERED** this    13th    day of November, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE